IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-03714-CMA-SKC

KEYBANK NATIONAL ASSOCIATION,

    Plaintiff,

v.

CHARLES H. WILLIAMS, and
TIMOTHY WELDON,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Charles H. Williams's and Timothy Weldon's Motion for Summary Judgment. (Doc. # 159.) Upon consideration of the Motion (Doc. # 159), the Response (Doc. # 163), the Reply (Doc. # 172), the exhibits[1] thereto (Docs. ## 160, 163-1, and 173), and the applicable law, the Motion is granted in part and denied in part for the following reasons.

---

[1] In ruling on the Motion, the Court has not considered any inadmissible evidence, including appellate briefing cited by Defendants, portions of which were attached as exhibits. *See Honeycutt v. Safeway, Inc.*, 475 F. Supp. 2d 1063, 1071 (D. Colo. 2007) ("It is the rule in this jurisdiction that only admissible evidence may be considered when ruling on a summary judgment motion.").

## I.     BACKGROUND

This case involves Defendants' alleged misappropriation of trade secrets and violation of non-solicitation and trade secret agreements with their former employer, Plaintiff KeyBank National Association ("KeyBank"). KeyBank is a national bank that provides a wide range of retail and commercial banking, including commercial mortgage servicing.

Defendant Williams ("Mr. Williams") began working for KeyBank in 2007. (Doc. # 160 at APP 00002666.) Beginning in August 2014, until January 18, 2019, Mr. Williams was employed as a Senior Vice President and Regional Manager in KeyBank's commercial mortgage practice. (Doc. # 160 at APP 0000354; Doc. # 163-1 at R.A. 00001.)

Defendant Weldon ("Mr. Weldon") was employed as a Vice President in Plaintiff's Mortgage Banking group from November 2016, until January 24, 2019. (Doc. # 160 at APP 0000417, 0000458-459.) Both Defendants were assigned to Plaintiff's Denver office.

As part of their employment with Plaintiff, Defendants each signed more than one "Agreement Regarding Trade Secrets, Intellectual Property, and Non-Solicitation of Employees" (the "Trade Secrets Agreement"). (Doc. # 163-1 at R.A. 00031-33; Doc. # 160 at APP 0000357, 0000424-425.) The Trade Secrets Agreement contains the following provisions relevant to the Court's analysis:

4. **<u>Confidentiality of KeyCorp's Trade Secrets</u>**

> . . . I agree that: . . . (b) during and after my employment with [KeyBank], I will not use, publish, sell, trade or otherwise disclose [KeyBank's] Trade Secrets; and (c) upon termination of my employment with [KeyBank], I will immediately return to [KeyBank] all documents, data, information, and equipment in my possession or to which I have access that may contain such Trade Secrets . . .

(*Id.* at R.A. 00031.) The Trade Secrets Agreement defines "Trade Secrets" to include "any and all . . . financial information, compilations and lists . . . that are developed, owned, utilized, or maintained by [KeyBank]." (*Id.* at ¶ 1.b.) Further, the Trade Secrets Agreement defines trade secrets to include information covered by the Ohio Uniform Trade Secrets Act. (*Id.*)

The Trade Secrets Agreement also contains a "Non-Solicitation of Key[Bank] Employees" provision, which prohibits Defendants from "solicit[ing] or entic[ing] for employment or hire any [KeyBank] employee without the written consent of [KeyBank]." (*Id.* at R.A. 00032 ¶ 6.) Mr. Williams and Mr. Weldon both signed multiple trade secrets agreements during their employment with KeyBank. (Doc. # 160 at APP 0000357, 0000424-425.)

Additionally, during their employment, Mr. Williams and Mr. Weldon accepted multiple Restricted Stock Unit Award and Acceptance Agreements ("Award Agreement"). (Doc. # 163-1 at R.A. 00019-25.) The Award Agreement prohibits Defendants from "call[ing] upon, solicit[ing], or do[ing] business with any Key[Bank] customer . . . with whom [they] interacted or learned of during" employment with KeyBank, for one year after their departure. (*Id.* at R.A. 00025 ¶ 4(a).) The Award Agreement also prohibits Defendants from "hir[ing] or solicit[ing] or entic[ing] for

3

employment any Key[Bank] employee, without the written consent" of KeyBank. (*Id.* at R.A. 00024-25 ¶ 3.)

In September 2018, Mr. Williams began negotiating new employment with Newmark Knight Frank ("Newmark"). (Doc. # 160 at APP 0000193.) Mr. Weldon also began meeting with Mr. Williams and Newmark about potential employment at Newmark. (*Id.* at APP 0000421.) As part of employment negotiations, Mr. Williams provided Newmark with two types of documents at issue in this case: (1) multiple PDF documents containing portions of KeyBank's internal tracking documents known as Pipeline Reports (Doc. # 160 at APP 0000520-24); and (2) multiple Excel spreadsheets of the Pipeline Reports (Doc. # 160 at APP 0000522-54).

The PDF Pipeline Reports contain information that KeyBank maintains is confidential, including information about KeyBank's revenue and fees. (Doc. # 160 at APP 0000425.) The PDF Pipeline Reports also contain revenue data, including origination, underwriting, and servicing fees. (*Id.*) Defendants dispute that the PDF Pipeline Reports contain information that constitutes a trade secret.

The Excel Pipeline Reports contain the same information as the PDF Pipeline Reports. However, the Excel Pipeline Reports also contain filtered and hidden data, including hidden columns that the PDF Pipeline Reports did not contain. (Doc. # 160 at APP0000427.)

Prior to his departure from KeyBank, Mr. Williams transmitted the PDF and Excel Pipeline Reports to Newmark. Mr. Weldon did not transmit the Pipeline Reports to

Newmark. However, Mr. Weldon emailed copies of Pipeline Reports to his personal email account prior to his departure from KeyBank. (Doc. # 160 at APP 0000427.)

## II.     LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.  DISCUSSION

Plaintiff has brought the following causes of action against Defendants: (1) breach of contract against Defendant Williams; (2) breach of contract against Defendant Weldon; (3) misappropriation of trade secrets against Defendant Williams; (4) misappropriation of trade secrets against Defendant Weldon; (5) intentional interference with a business relationship against Defendant Williams; and (6) breach of the duty of loyalty against Defendant Williams. (Doc. # 1.) Mr. Williams and Mr. Weldon seek summary judgment on all the claims against them.

### A.  BREACH OF CONTRACT (COUNTS ONE AND TWO)

1.  Applicable Law

The parties do not dispute that KeyBank's breach of contract claims are governed by Colorado law. (Doc. # 159 at 23 and Doc. # 163 at 17.) To state a claim

for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages. *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009).

In Colorado, covenants not to compete are void, unless they fit within one of the four statutory exceptions. Colo. Rev. Stat. § 8–2–113(2). At issue in this case is whether either or both of the following two exceptions apply: (1) the agreements were for the protection of trade secrets; or (2) Defendants were "executive and management personnel." *See Wells Fargo Ins. Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1104 (D. Colo. 2016). Ordinarily, the determination of whether an employee is executive or management is a question of fact. *Phoenix Cap., Inc. v. Dowell*, 176 P.3d 835, 841 (Colo. App. 2007). Under Colorado law, non-solicitation clauses are treated as covenants not to compete. *Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1134 (D. Colo. 2018).

2.  <u>Analysis of Breach of Contract Claim Against Mr. Williams (Count One)</u>

Plaintiff has brought a claim against Mr. Williams for alleged breach of contract related to the Awards Agreement and the Trade Secrets Agreement. Considering the voluminous competing evidence presented by the Parties and the applicable law, the Court finds that there are genuine disputes of material fact that preclude summary judgment, including, but not limited to:

- Whether Mr. Williams's employment at KeyBank falls within the definition of "management personnel;"

- Whether Mr. Williams violated the Awards Agreement by soliciting KeyBank customers;

- Whether Mr. Williams violated the Award Agreement by soliciting KeyBank employees;

- Whether Mr. Williams violated the Trade Secrets Agreement by retaining the Pipeline Reports after his employment with KeyBank ended; and

- Whether Mr. Williams violated the Trade Secrets Agreement by transmitting the Pipeline Reports—in PDF and Excel formats—to Newmark.

In view of these factual questions, the Court finds that summary judgment is not appropriate as to Count One

3. <u>Analysis of Breach of Contract Claim Against Mr. Weldon (Count Two)</u>

KeyBank's claim for breach of contract against Mr. Weldon is also based on his alleged breach of the Award Agreement and the Trade Secrets Agreement. (Doc. #1 at ¶¶ 83-90.)

In its Complaint, KeyBank alleged that Mr. Weldon breached the Award Agreement by soliciting KeyBank customers and soliciting Mr. Williams to terminate his employment with KeyBank. (*Id.* at ¶ 84.) However, non-solicitation provisions and covenants not to compete are void unless an exception applies. *See Wells Fargo*, 276 F. Supp. 3d at 1104. KeyBank does not argue that a statutory exception applies to the non-solicitation and non-compete provisions in Mr. Weldon's contracts. Indeed, KeyBank has abandoned this portion of its claim and did not address it in response to the Motion. Because KeyBank did not respond to the argument, the Court finds that

8

KeyBank has conceded the point. *See Connell Solera, LLC v. Lubrizol Advanced Materials, Inc.*, No. 21-CV-0336-WJM-SKC, 2022 WL 326562, at *9 (D. Colo. Feb. 3, 2022) (finding that a nonmoving party's failure to respond to a claim in a motion for summary judgment constitutes a concession).

The Court also finds that, in the absence of an exception, Plaintiff cannot prove the existence of a valid contract based on violation of the non-compete and non-solicitation provisions. *LS3 Inc. v. Cherokee Fed. Sols., L.L.C.,* No. 20-CV-03555-PAB-NYW, 2021 WL 4459053, at *4 (D. Colo. Sept. 29, 2021) (citing *Carnation Bldg. Servs. v. City & Cnty. of Denver*, No. 11-cv-00703-CMA-MEH, 2011 WL 694047, at *14 (D. Colo. Dec. 29, 2011)). Accordingly, claims based on Mr. Weldon's alleged violation of the non-solicitation and non-compete provisions of his contracts will be dismissed.

KeyBank also claims that Mr. Weldon's retention of confidential Pipeline Reports in his personal email account after his employment ended violates the Trade Secrets Agreement. The Court finds that there are genuine disputes of material fact that preclude complete summary judgment as to this portion of Count Two, including, but not limited to whether Mr. Weldon violated the Trade Secrets Agreement by retaining Pipeline Reports after his employment with KeyBank ended. The Court notes that KeyBank must prove all the elements of breach of contract at trial, including damages.[2] In view of these factual questions, the Court finds that complete summary judgment is

---

[2] Unfortunately, the parties failed to fully brief the issue of damages with respect to the breach of contract claim against Mr. Weldon. The Court will not construct arguments for the parties. *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009( ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made.").

not appropriate as to Count Two. Accordingly, the Court grants in part and denies in part Defendants' Motion as to Count Two.

## B.     MISAPPROPRIATION OF TRADE SECRETS AGREEMENT

1. <u>Applicable Law</u>

Plaintiff brought their causes of action for misappropriation of trade secrets under Ohio's Uniform Trade Secrets Act ("OUTSA"). Both parties cite Ohio law to analyze these claims. Although Defendants state that they do not "concede that Ohio law applies to KeyBank's trade secret claim" (Doc. # 172 at n.11), they have not provided any analysis regarding what other case law would apply. Nonetheless, both parties agree that the Court's decision is the same whether Colorado law or Ohio law applies. The Court agrees.

To prove a claim for misappropriation of trade secrets, KeyBank must prove that: (1) KeyBank possessed a valid trade secret; (2) the trade secret was acquired, disclosed, or used without consent; and (3) the person acquiring, disclosing, or using the trade secret knew or should have known that the trade secret was acquired by improper means. *Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 521 F. App'x 453, 456 (6th Cir. 2013); *Ciena Commc'ns, Inc. v. Nachazel*, No. 09-CV-02845-MSK-MJW, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010); *see also* Colo. Rev. Stat. § 7-74-102(2)(a) (defining misappropriation in the Colorado Uniform Trade Secrets Act as "acquisition," disclosure," *or* "use" of a trade secret). Whether information constitutes a trade secret is a question of fact. *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 979 (6th

Cir. 2021) (citation and quotation marks omitted); *Arctic Energy Servs., LLC v. Neal*, No. 18-CV-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018).

2. Analysis

The Court finds that Defendants have not met their burden of demonstrating the absence of a genuine dispute as to material facts governing KeyBank's trade secret misappropriation claims. For starters, the parties vehemently dispute the first essential element of the claim: whether KeyBank has adequately identified information that rises to the level of a trade secret. In particular, the parties dispute whether the PDF and Excel Pipeline Reports contained any trade secrets giving rise to a claim for misappropriation of trade secrets.

Defendants also assert that KeyBank's misappropriation claims fail as a matter of law because KeyBank cannot show that Defendants "used" the trade secrets. (Doc. # 172 at 10-12.) However, a claim for misappropriation does not require the "use" of the trade secret. Rather, a plaintiff can establish trade secret misappropriation by proving a defendant's "acquisition" of the secret or "disclosure or use" of the secret. *AtriCure*, 842 F. App'x at 979. Under the plain language of the governing statute, misappropriation includes, but is not limited to, "'[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.'" *List Indus., Inc. v. Umina*, No. 3:18-CV-199, 2021 WL 2916967, at *12–13 (S.D. Ohio July 12, 2021) (quoting Ohio Rev. Code § 1333.61(B)(1)).

Defendants cite to several Ohio cases to argue that unauthorized use is an essential element of misappropriation of a trade secret. (Doc. # 172 at 9-10.) However,

each of these cases is based on the elements set forth in *Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008). Since deciding *Heartland*, the Sixth Circuit has subsequently determined that the *Heartland* elements are outdated in light of the plain language of the Ohio Uniform Trade Secrets Act. *See Kendall Holdings*, 521 F. App'x at 457 n.6; *see also List Indus., Inc.*, 2021 WL 2916967, at *12 n.11 (noting that the elements in *Heartland* were based on a decision that predated the OUTSA by over thirty years).

In light of the applicable law and the evidence presented, the Court finds that there are genuine issues of material fact that preclude summary judgment, including, but not limited to:

- Whether the PDF and Excel Pipeline Reports constitute a trade secret; and
- Whether Mr. Williams and Mr. Weldon acquired, used, or disclosed KeyBank's trade secrets.

Considering these factual disputes, the Court finds that summary judgment is not appropriate as to Counts Three and Four.

### C. REMAINING CLAIMS AGAINST DEFENDANT WILLIAMS

With respect to the remaining claims at issue, the Court finds that disputed issues of material fact preclude the Court from granting summary judgment as to KeyBank's claims against Mr. Williams for: (1) breach of loyalty; and (2) tortious interference with a business relationship. In light of the evidence presented by the parties and the applicable law, the Court finds that there are genuine disputes of material fact that preclude summary judgment, including, but not limited to:

- Whether Mr. Williams's employment at KeyBank falls within the definition of "management personnel;"
- Whether Mr. Williams solicited KeyBank employees for Newmark while employed at KeyBank;
- Whether Mr. Williams solicited KeyBank customers; and
- Whether Mr. Williams interfered with KeyBank's relationship with its customers.

In view of these factual questions, the Court finds that summary judgment is not appropriate as to Counts Five and Six.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.
- Defendants' Motion for Summary Judgment is DENIED as to Count One.
- Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART as to Count Two. Claims based on Defendant Weldon's alleged violation of the non-solicitation and non-compete provisions of his contracts will be DISMISSED.
- The Court DENIES the remainder of Defendants' Motion for Summary Judgment, including Counts Three through Six.

- On or before March 11, 2022, the parties shall contact Chambers to schedule a trial in this case pursuant to the Court's Civil Practice Standard 1.2(a).

DATED: March 7, 2022

BY THE COURT:

*Christine M. Arguello*
CHRISTINE M. ARGUELLO
United States District Judge