IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-03714-CMA-SKC

KEYBANK NATIONAL ASSOCIATION,

      Plaintiff,

v.

CHARLES H. WILLIAMS and
TIMOTHY WELDON,

      Defendants.

---

## ORDER DENYING PLAINTIFF'S FED. R. CIV. P. 37(e) MOTION TO SANCTION DEFENDANT CHARLES WILLIAMS FOR SPOLIATION OF EVIDENCE

---

This Order addresses Plaintiff KeyBank's Fed. R. Civ. P. 37(e) Motion to Sanction Defendant Charles Williams for Spoliation of Evidence [Dkt. 180]. The Motion was referred to the magistrate judge. In addition to considering the briefing on the Motion and pertinent law, this Court held an evidentiary hearing on August 3, 2022, at which the following four witnesses testified under oath: (1) Defendant Charles Williams; (2) Jean Williams (Mr. Williams' wife); (3) Daniel Regard, II (Plaintiff's expert witness); and (4) Brian Chase (Mr. Williams' expert witness).

### A. RELEVANT FACTS

The facts of this case have been chronicled in many prior orders of this Court. Pertinent to this Motion, and in a nutshell, during his April 22, 2021 deposition, Mr.

Williams testified he used his wife's laptop from time to time beginning in about November/December 2018 after his computer permanently crashed. On March 18, 2021, KeyBank served Mr. Williams' counsel with a subpoena for a forensic examination of the wife's laptop. That laptop was produced for forensic examination on April 6, 2021. The results of the forensic examination revealed that on March 19, 2021—the day after defense counsel received the subpoena—someone accessed and permanently deleted multiple files on the device. These files included two versions of the Pipeline Reports at issue in this case ("2017 Total Volume.pdf" and "2018 Total Volume Through Sept.pdf"); an entire folder titled "BP;"[1] the laptop's recycle bin; and other files. Forensic analysis found a minimum of 63 filenames in total were permanently deleted or otherwise missing from the laptop. The parties do not appear to dispute that at least 61 of the 63 files included either documents belonging to KeyBank (like the Pipeline Reports) or documents that likely fell within Mr. Williams' preservation obligation. But since the documents themselves cannot be retrieved, there is no evidence of their content to know for sure.

Mrs. Williams testified at the hearing that she deleted the files, which were all contained in a folder she created named "Charlie." She saved and maintained personal information in the Charlie Folder, such as photographs, personal emails

---

[1] Mr. and Mrs. Williams testified "BP" means Berkley Point, a reference to an affiliate or predecessor entity of Newmark, Mr. Williams' new employer. In its Motion KeyBank argued "BP" stood for "Business Plan." It's unclear whether KeyBank maintains this argument, but in any event, it presented the Court with no evidence to refute Mr. and Mrs. Williams' testimony concerning the meaning of "BP."

between she and Mr. Williams going back 16 years, and medical information pertaining to their son. When she learned from Mr. Williams that her computer was being subpoenaed in this lawsuit, she "panicked." She was concerned Mr. Williams would be embarrassed by the personal items in the Charlie Folder, so she deleted the folder using the "most aggressive" option she knew, but only after first saving items pertaining to her son elsewhere. She testified she did this behind Mr. Williams' back—she neither told him of her intent to shred the folder prior to doing so, nor did she tell him after she did it, until the forensics exposed her. She further testified she was aware Mr. Williams "had to preserve everything" at the time she deleted the folder, but she did not believe the folder held anything pertaining to KeyBank.

For his part, Mr. Williams corroborated he was unaware his wife planned to, or in fact did, delete anything from the laptop. He testified when he learned of the subpoena he told his wife they were going to do forensics on her laptop, and he told her he "didn't think there was anything on it." He said this because it had been three years since his use of that laptop, "[he] wasn't thinking about that. There was a lot going on." He first learned of the deleted files after the forensics came back and said to his wife, "Holy shit, we need to call Ray!"[2]

KeyBank seeks sanctions against Mr. Williams. At a minimum it seeks an order allowing it to put on evidence at trial, and make arguments to the jury, regarding Mr. Williams' spoliation of ESI and an award of its fees and costs in

---

[2] Referring to his lawyer in this case.

bringing the Motion. At most it seeks various adverse inference instructions. [Dkt. 212 (notice identifying the adverse inferences sought).]

## B. LEGAL PRINCIPLES

To obtain sanctions for spoliation of evidence, a movant must first show "(1) a party ha[d] a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). Even if a party establishes duty and prejudice, if it "seeks an adverse inference to remedy the spoliation, it must also prove bad faith. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations and quotation omitted). The 2015 Advisory Committee notes to Rule 37(e) explain the bad faith requirement like this:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

Fed. R. Civ. P. 37 Advisory Committee Note to Subdivision (e)(2), 2015 Amendment.

The moving party has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015)

## C. ANALYSIS

The Court finds Mr. Williams' duty to preserve evidence arose well-before the March 18, 2022 subpoena. Without pinpointing the date the obligation arose, the Court observes KeyBank brought this lawsuit on December 20, 2019, and the parties have been vigorously litigating ever since, including a preliminary injunction hearing in August 2020. Thus, Mr. Williams preservation obligation was manifest by March 2022 when KeyBank served the subpoena.

But the Court does not find KeyBank has established a preponderance of evidence demonstrating it has been prejudiced by the destruction of these files by Mrs. Williams. This is in part because KeyBank has produced no evidence concerning the content of these files. At the hearing, Mr. Chase provided credible testimony that based on various methods at his disposal, it is his opinion 61 of the 63 deleted files have either been produced by Defendants in this litigation, identified as privileged on Defendant's Privilege Log, or are completely irrelevant. While not definitive to establishing the content of these 61 deleted files, his testimony and the related evidence allows a reasonable inference that a majority of the deleted files have been either produced or identified on Defendants' privilege log. Ultimately, the burden is on KeyBank, and KeyBank has offered no credible evidence to refute the evidence

suggesting a significant majority of the deleted files have already been produced or identified during discovery in this case.

Even further, the adverse inferences KeyBank seeks further demonstrate the absence of prejudice. For example, KeyBank seeks to instruct the jury it may

> . . . infer from the destruction of data that the data was unfavorable to Defendant Williams with respect to that aspect of Count I of Plaintiff's Complaint against Defendant Williams for breach of the Trade Secrets Agreement and, in particular, the question whether Defendant Williams violated the Trade Secrets Agreement by retaining KeyBank confidential information (including, but not limited to, the Pipeline Reports) after his employment with KeyBank; and

> . . . infer from the destruction of data that the data was unfavorable to Defendant Williams with respect to Count III of Plaintiff's Complaint against Defendant Williams for Misappropriation of Trade Secrets and, in particular, the question whether Defendant Williams acquired KeyBank trade secrets without consent and by improper means; and

> . . . infer from the destruction of data that the data was unfavorable to Defendant Williams with respect to Count VI of Plaintiff's Complaint against Defendant Williams for Breach of the Duty of Loyalty and, in particular, the question whether Defendant Williams breached his duty of good faith and loyalty towards KeyBank when, while still employed, he removed KeyBank confidential information from its systems and saved it to personal electronic devices within his possession, custody, or control.

[Dkt. 212.] But these inferences are superfluous based on the facts and evidence already established in this case.

KeyBank already has direct and circumstantial evidence to establish the adverse inferences it seeks. For example, at the preliminary injunction hearing, Mr. Williams testified he understood KeyBanks' Pipeline Reports are

6

confidential and are not to be shared outside of KeyBank. [Dkt. 94 p. 6.] He also testified he had the Pipeline Reports on his personal computer even though he knew those reports were never to go outside of KeyBank's own computer network [Dkt. 117, p.383 ll.4-9]. And the parties stipulated Mr. Williams emailed these Pipeline Reports to Newmark, his new employer. [Dkt. 93.] Thus, the inferences KeyBank seeks adversely, can be drawn from existing evidence produced in this case. *Cf. Adverse Inference*, Black's Law Dictionary (8th ed. 1999) (a "detrimental conclusion drawn by the fact-finder *from a party's failure to produce* evidence within the party's control.") (emphasis added). This highlights the seeming redundancy of the deleted files with existing evidence and reveals the prejudice to KeyBank to be illusory.

Nor is there evidence of bad faith by Mr. Williams. He did not direct his wife to delete files from her laptop; she deleted the files behind his back, without his knowledge. While Mrs. Williams did intend to delete the Charlie Folder, there is no evidence Mr. Williams, the defendant in this case, intended to do so directly, or indirectly by using his wife. The evidence was unrefuted that Mrs. Williams acted independently and without Mr. Williams' knowledge. Therefore, no adverse inference instruction is warranted because KeyBank has failed to establish Mr. Williams' bad faith. *See, e.g., James v. Midlands Choice, Inc.*, No. 8:13CV69, 2014 WL 12605516, at *5 (D. Neb. Dec. 5, 2014) ("There is no evidence Russell destroyed the computers at James' direction. While James

7

never specifically told her husband not to destroy the computers, James' conduct does not rise to the level of 'intentional destruction' but instead negligence, which the Eighth Circuit has found insufficient to warrant an adverse inference instruction.").

*    *    *

KeyBank has failed to establish bad faith to warrant any adverse inference instructions. It has also failed to meet its burden to show it has been prejudiced, and thus, no lesser sanction is warranted. The Motion is DENIED.

DATED: August 17, 2022

BY THE COURT:

S. Kato Crews
United States Magistrate Judge